STATE ex rel. CONDON, Appellant v. ERICKSON, Respondent

(182 N.W.2d 304)

(File No. 10767. Opinion filed December 15, 1970)

**Woods, Fuller, Shultz & Smith, John E. Simko, Jr.,** Sioux Falls, for appellant.

**Gordon Mydland,** Atty. Gen., **Leonard E. Andera,** Asst. Atty. Gen., Pierre, for respondent.

HOMEYER, Judge.

This is an appeal from the judgment of the circuit court of Minnehaha County which quashed petitioner's writ of habeas corpus brought to compel his release from the custody of the respondent. The petitioner, Tilden Louis Condon, on August 12, 1965, was convicted of first degree rape upon his plea of guilty and sentenced to a term of 15 years in the state penitentiary by the circuit court of Dewey County. He is an Indian, 23 years of age at the time of his conviction and a member of the Cheyenne River Sioux Tribe. Petitioner will hereafter be referred to as Condon.

At the habeas corpus hearing held on July 24, 1969, the only witness was Condon. However, earlier he had filed a pro se petition for post-conviction relief under SDCL 23-52 on which an evidentiary hearing was held in Dewey County before the sentencing judge on June 11, 1968. In that proceeding, in the main he asserted his guilty plea was involun-

tary and resulted from fear and threats allegedly made by the prosecuting attorney. Condon was represented by counsel at the hearing. He testified as did his mother and also the prosecuting attorney. The court found adversely to his contentions. No appeal was taken. We believe the record in that proceeding supports this determination. The court file from Dewey County with complete transcripts of all proceedings was received as evidence in the present proceeding.

On November 2, 1964, the date of the alleged offense, Condon was serving a jail sentence in the tribal jail at Eagle Butte for public intoxication. He testified, on that day at about 10 a. m. while working as a trustee near the jail, he found a half gallon of wine; that he drank all of it before about 1:45 p. m. except for about four pop bottles full which he sold for $2.00. He then went to the hospital to see a doctor. About 2 p. m. he went downtown to a bar and had a bottle of beer. He woke up about 7 p. m. on the football field, returned to downtown bars, had some more to drink and was picked up by tribal police at about 7:30 p. m. who returned him to the tribal jail.

That evening he was questioned in the tribal jail by an officer from the Bureau of Indian Affairs and was physically examined by a special agent from the state office of the Division of Criminal Investigation. He was kept in a segregated jail cell that night and the following day he signed a written statement pertaining to the crime. About a day and a half after the alleged rape, he was identified by the victim.

Condon was kept in the tribal jail until November 12, 1964 on the public intoxication charge when he was arrested by a United States Marshal on a warrant charging him with first degree rape. He says this was the first time he knew he was charged with the offense. Bond was fixed by a United States Commissioner at Mobridge and he was then taken to the Brown County jail at Aberdeen. He says he was interrogated by a FBI agent at Aberdeen on November 13th and two statements were taken from him. Condon was in jail in Aberdeen from November 12, 1964 to April 16, 1965, except for 65 days spent at a federal medical center in Spring-

field, Missouri, for psychiatric tests. A federal grand jury indictment was filed against him on March 1, 1965, which was dismissed by the government on its own motion on May 25, 1965.

Condon was arrested on the state charge on April 16, 1965 and bond was fixed. He was taken to the Walworth County jail at Selby. The following day he was contacted by his counsel, Arend E. Lakeman of Mobridge. So far as we can determine from the record this was the first time he was represented by counsel. Thereafter Lakeman represented him to and through his plea of guilty.

On April 20, 1965, Condon through his counsel waived preliminary hearing. At the same time he moved for a dismissal of the complaint.[1] On May 4, 1965 at the opening of the spring term of circuit court the motion for dismissal was denied as was a motion for continuance. Condon was formally arraigned, acknowledged he had been advised of his constitutional rights, and entered a plea of not guilty. On May 11, 1965, with the jury reporting for the trial, Lakeman renewed the motions and informed the court Condon had been indicted for the same offense in the United States courts and was awaiting trial. The court then continued the case until the action in the federal court had been disposed of. On June 15, 1965, the court denied Condon's motion for change of venue.

During the forepart of August while in the Walworth County jail awaiting trial, Condon escaped from the custody of the sheriff and was apprehended at Mobridge after about one day of freedom. On August 12, 1965, he appeared before the court with his counsel and moved that his plea of not

---

1. The alleged rape occurred on November 2, 1964, about 4 p.m. in the public library at Eagle Butte which is on land owned by the Dakota Club Library, Incorporated, a nonprofit organization. Lakeman contended this was "Indian Country" and the United States had exclusive jurisdiction. See Application of Lafferty, 80 S.D. 411, 125 N.W.2d 171, and State v. Barnes, 81 S.D. 511, 137 N.W.2d 683. Shortly before this time, a trial judge had construed Lafferty as holding state courts were without jurisdiction under somewhat similar facts.

guilty be withdrawn. The motion was granted. He then entered a plea of guilty and informed the court that the change of plea was made after thorough consultation with his counsel.

Condon in the court below and here on appeal contends his constitutional rights were violated voiding his plea of guilty. His claims of constitutional error are predicated on (1) denial of effective assistance of counsel, and (2) the record shows his guilty plea was not voluntary.

## I.

As we understand Condon's argument on this point, he finds no real fault with counsel who represented him in the state court proceedings, but he claims he should have had the assistance of counsel or advised of his right to assistance of counsel, while in the tribal jail and in the Brown County jail when he was interrogated and written statements were taken concerning the alleged crime. He says the accusatory stage had been reached at that time, Escobedo v. Illinois (June 22, 1964), 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Miranda v. Arizona (June 13, 1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974,[2] and also when he was identified by the victim, United States v. Wade (June 12, 1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California (June 12, 1967), 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178,[3] and later when it was decided he should be sent for psychiatric examination; and thus he says he had the right to counsel at those times and he did not waive that right.

The record does not contain the written statements purportedly taken. Neither are we told of the contents of the statements or how damaging they might have been to Condon. Even if we assume such statements a-

2. Escobedo and Miranda were held not retroactive in Johnson v. New Jersey (June 20, 1966), 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. See also State v. Connors (March 6, 1967), 82 S.D. 489, 149 N.W.2d 65.

3. Wade and Gilbert were held not retroactive in Stovall v. Denno (June 12, 1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. See also Utsler v. State (October 30, 1969), 84 S.D. 360, 171 N.W.2d 739.

mounted to a confession of guilt, and further assume they would be inadmissible as evidence upon a trial for some reason urged by Condon or otherwise, since Condon pleaded guilty they are relevant in the present proceeding only to the extent that they may have affected the voluntary character of his plea. It is well settled that judgment on a plea of guilty which is entered voluntarily is not rendered invalid because for some reason the defendant had previously made a confession under circumstances which might have rendered it inadmissible, if the defendant had pleaded not guilty and had gone to trial. This is so because the plea, if voluntarily and understandably made, is conclusive as to the defendant's guilt, admitting all the facts charged and waiving all nonjurisdictional defects in the prior proceedings against him. The judgment and sentence which follow the plea of guilty are based solely upon the plea and not upon any evidence which might have been acquired improperly by the prosecutor. Thus, a confession in the possession of the prosecutor which has been illegally obtained cannot be made the basis of a collateral attack upon a judgment of conviction entered upon a plea of guilty which was voluntarily and understandably made. McMullen v. State, 84 S.D. 538, 173 N.W. 2d 499; Hawkins v. State of Wisconsin, 26 Wis.2d 443, 132 N.W.2d 545, 20 A.L.R.3d 717. The same rule is applicable to a lineup identification in the absence of counsel. People v. Coles, 34 A.D.2d 1051, 312 N.Y.S.2d 621.

## II.

Under this point Condon argues the record reveals a totality of facts and circumstances from which it must be concluded that his plea of guilty was not voluntarily and understandingly made.

It is well settled that a conviction, whether it be in state or federal court which is based upon an involuntary or coerced plea, whether it be unfairly obtained or given through ignorance, fear, trickery or coercion, is invalid as inconsistent with due process of law. Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009; Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473.

This court in a recent case, Application of Dutro, 83 S.D. 168, 156 N.W.2d 771, reiterated a long standing rule that a plea of guilty if induced by fear, misrepresentation, trickery, deception, duress or coercion was void as a violation of due process undermining the jurisdiction of the court and subject to collateral attack. State v. Sewell, 69 S.D. 494, 12 N.W. 2d 198; State ex rel. Henning v. Jameson, 71 S.D. 144, 22 N. W.2d 731; State ex rel. Baker v. Jameson, 72 S.D. 638, 38 N. W.2d 441; State ex rel. Burns v. Erickson, 80 S.D. 639, 129 N.W.2d 712. In Nachtigall v. Erickson, 85 S.D. 122, N.W.2d 198, we said:

"For many years South Dakota courts by virtue of the statute and our decisions interpreting the statute have been to a large extent conforming to many of the requirements of **Boykin**[4] in accepting guilty pleas. Nevertheless, it is now settled as a principle of constitutional law that a plea of guilty cannot stand unless the record in some manner indicates a free and intelligent waiver of the three constitutional rights mentioned in **Boykin**—self-incrimination, confrontation and jury trial—and an understanding of the nature and consequences of the plea.[5] South

---

4. Boykin v. Alabama (June 2, 1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274.
5. At the habeas corpus hearing, Condon testified: "Q And then did he (Lakeman) advise you of any of your rights? A I wouldn't know what you mean by rights. Q Did he tell you that you could have witnesses subpoenaed in your behalf? A Yes sir. Q And that you had the right to a jury trial? A Yes sir. Q And did he inform you of the offense that you were charged with? A Yes sir. Q And the maximum sentence that you could serve if you were convicted of it? A Yes sir. Q Did he advise you of any other rights that you remember? A That I· could testify if I wanted to or not. Q In other words, that you didn't have to take the stand as a witness if you didn't want to? A Yes. Q And he advised you of all these rights prior to the time that you entered a plea of guilty? A Well he advised me of my rights at the time I was going to plead guilty. Q Okay. On the day you were going to plead guilty is that what you mean? A Yes it wasn't on a day, no, but it was pretty close to it. Q He was in Court with you in Court when you did plead guilty? A Yes sir."

Dakota judges can no longer assume that an accused represented by counsel has been informed of such matters and the judge must actively participate by 'canvassing the matter with the accused'. A silent record is not sufficient."

 The decision of Nachtigall recognizes the binding effect of **Boykin** on state courts but we refused to apply it retroactively. We again refused to so apply it in Langdeau v. State, 85 S.D. 189, 179 N.W.2d 121. We adhere to those holdings. Nevertheless, in Nachtigall we reviewed the record to determine if it supported the court's determination that the plea of guilty was entered freely and voluntarily. In the proceeding at bar the trial court found:

"That the Petitioner, Tilden Louis Condon, while represented by able counsel, and after having been fully advised of his rights, freely and voluntarily changed his plea to guilty to the charge and was sentenced by the State Court."

In our opinion the record supports this finding under principles set forth in Nachtigall.[6]

In Williams v. Cox, 10 Cir., 350 F.2d 847, where a claim was made of ineffective assistance of counsel, the court said:

"No particular ritual is required in advising a criminal defendant of his fundamental rights. * * * Where, as in this case, the defendant appears in open court with his attorney who is competent to represent him and does so under circumstances fairly denoting that the attorney speaks for the defendant, who comprehends what is being done and its significance, and who acquiesces in counsel's

---

6. When questioned at the Post-Conviction Hearing, Condon testified: "Q Did you talk to your attorney about changing your plea to guilty? A I wrote him a letter—yes sir. Q And that was after you escaped from jail? A Yes sir. Q Did he advise you at that time that it would be better in view of your acts that you enter a plea of guilty. rather than go to a jury trial because of your escape? Did he make any statement to you to that effect? A Ah—not orally nor by letter.

statement that the defendant understands the charges brought against him and has been fully advised of his constitutional rights and enters a plea of guilty, such plea is valid."

See also United States v. Sturm, 7 Cir., 180 F.2d 413, and Edwards v. United States, 103 U.S.App.D.C. 152, 256 F.2d 707.

 We have also considered the delay between Condon's initial arrest on the federal charge and his plea of guilty on the state charge, in determining whether his guilty plea was voluntary. Condon himself has never contended his plea was induced by the delay. In fact, after his not guilty plea on May 4, 1965, he moved for a continuance which the court first denied. The motion was renewed on May 11, 1965 and was granted when the court ascertained Condon had been indicted and was awaiting trial on the same charge in federal court. While we do not condone the delay, nevertheless it was only a circumstance which the trial court had the right to consider but did not compel a finding that Condon's plea was involuntary.

Affirmed.

All the Judges concur.